IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LUIS ORTIZ HERNANDEZ, *Plaintiff* | § § § § | SA-22-CV-01069-XR |
| -vs- | § § § | |
| RUTH SARAI ERAZO, *Defendant* | § § § § | |

### ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER

On this date, the Court considered Plaintiff Luis Ortiz Hernandez's application for an ex parte motion for entry of a temporary restraining order and scheduling of an expedited hearing (ECF No. 2), which was filed with the Court on Monday, October 17, 2022. For the reasons discussed below, the motion is **GRANTED**.

### BACKGROUND

This case arises under the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or "Convention"), Oct. 24, 1980, T.I.A.S. No. 11670, S. Treaty Doc. No. 99-11, and its implementing legislation, the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq.* The Hague Conference on Private International Law adopted the Convention in 1980 to address the problem of international child abductions during domestic disputes, such as the one at issue in this case.

Petitioner Luis Ortiz Hernandez ("Ortiz") initiated this action to secure the return of his twenty-month-old son, M.S.O. (the "Child"), who was allegedly removed from Mexico without Petitioner's consent or acquiescence by the Child's mother, Respondent Ruth Sarai Erazo, on October 9, 2022. ECF No. 5.

The Child was born in Tequixquiac, Mexico on January 25, 2021, and, until his removal to the United States, lived with his parents, who have never married, at Petitioner's family residence in Mexico City, Mexico. *See id.* ¶¶ 6, 7, 10. Petitioner alleges the following: on October 3, 2021, Petitioner, Respondent, and the Child traveled to Monterrey, Nuevo Leon, Mexico, on a family vacation to visit Petitioner's aunt. *Id.* ¶ 12. On October 6, Petitioner was called back to Mexico City on business. *Id*. Respondent asked if she could stay in Monterrey with the Child for a few more days because she was having a good time, and Petitioner agreed. *Id*. Then, on October 9, 2021, Respondent and the Child disappeared from Petitioner's aunt's home. *Id*. ¶ 13. After being out of contact for a few hours, Petitioner alleges that Respondent called to inform him that, over his objections, she was going to fulfill her dream of living in the United States by crossing into the United States through the Rio Grande. *See id.* ¶ 13. Respondent called Petitioner again on October 12, to inform him that she had successfully crossed the river, and then on October 13, to let him know that she had reached San Antonio, where she planned to live with the Child and her own aunt, one of a number of relatives she has across the United States. *Id*. Petitioner alleges that "[b]ecause [he] refuses to leave his life behind and reside illegally in the United States like his former partner, he will be forever separated from his son without the intervention of this Court requiring the return of the Child to Mexico for custody proceedings under Mexican law." *Id.* at 4.

Petitioner filed this action on September 29, 2022, seeking leave to proceed *in forma pauperis*. ECF No. 1. His IFP application was granted, ECF No. 4, and his Original Petition and Request for Return of Minor Child to Petitioner (the "Petition") was filed on October 19, 2022. ECF No. 5. Petitioner now seeks (1) an *ex parte* temporary restraining order prohibiting the removal of the Child from the geographic jurisdiction of the Court, pending further order from

this Court, (2) an order setting a hearing on Plaintiff's request for a preliminary injunction, and (3) pursuant to Federal Rule of Civil Procedure 65, an order that the trial of the action on the merits be advanced and consolidated with the hearing on the Petition for the Return of the Child to Petitioner. ECF No. 2.

## DISCUSSION

### I. Legal Standard for Issuance of a Temporary Restraining Order ("TRO")

Under well settled Fifth Circuit precedent, a preliminary injunction is an extraordinary remedy that should not be granted unless the movant demonstrates by a clear showing: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). To determine the likelihood of success on the merits, the Court looks to the standards provided by the substantive law. *See Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 622 (5th Cir. 1985).

*Ex parte* restraining orders should be limited to preserving the status quo only as long as necessary to hold a preliminary injunction hearing. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Procedurally, when a party also requests a preliminary injunction, Federal Rule of Civil Procedure 65(a) allows the Court to consolidate a hearing on a motion for a preliminary injunction with a trial on the merits of the complaint. Rule 65(c) allows the Court to "issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Included in the Court's discretion when setting a security bond is the ability to "require no security at all." *A.T.N. Indus., Inc. v. Gross*, 632 F. App'x 185, 192 (5th Cir. 2015) (quoting *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996)).

## II.   The Hague Convention and ICARA

The Hague Convention seeks "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." ECF No. 3-1, Treaty Doc., Art. 1. It accomplishes these objectives through the return remedy. *Sanchez v. R.G.L.*, 761 F.3d 495, 503 (5th Cir. 2014) (citing *Abbott v. Abbott*, 130 S.Ct. 1983 (2010)). The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence. *Id.* at 1995. Ordering a return remedy does not alter the exiting allocation of custody rights, but does allow the courts of the home country to decide what is in the child's best interests. *Id.* As the Supreme Court explained in *Abbott*:

> The Convention's central operating feature is the return remedy. When a child under the age of 16 has been wrongfully removed or retained, the country to which the child has been brought must "order the return of the child forthwith," unless certain exceptions apply. A removal is "wrongful" where the child was removed in violation of "rights of custody." The Convention defines "rights of custody" to "include rights relating to the care of the person of the child and, in

> particular, the right to determine the child's place of residence." A return remedy does not alter the pre-abduction allocation of custody rights but leaves custodial decisions to the courts of the country of habitual residence.

*Id.* at 1989 (citations omitted). *"*By focusing on the child's return, the Convention seeks to 'restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court.'" *Sanchez*, 761 F.3d at 503 (citing *England v. England*, 234 F.3d 268, 271 (5th Cir. 2000)). The return remedy determines the country in which the custody decision is to be made; it does not make that decision. *Id.*

ICARA implements the Hague Convention by authorizing a person who seeks a child's return to file a petition in state or federal court and directing courts to "decide the case in accordance with the Convention." 22 U.S.C. § 9003(a), (b), (d). Suit should be filed in a court in the jurisdiction where the child is physically located. *Id.* (b). If the child in question has been "wrongfully removed or retained within the meaning of the Convention," ICARA provides that the child shall be "promptly returned," unless one of a number of narrow exceptions is applies. *Id.* § 9001.

**III.   Analysis**

   **A.   Substantial likelihood of success on the merits**

The Court must find that the Petitioner will likely succeed on the merits of his Original Petition and Request for Return of Minor Child to Petitioner before granting the requested temporary restraining order and other relief.

If a petitioner demonstrates that a child was wrongfully removed under the Hague Convention, the court must order the child's return to the country of habitual residence. 22 U.S.C.S. § 9001. Article 3 of the Convention provides that removal is "wrongful" if it "is in

breach of rights of custody attributed to a person. . . under the law of the State in which the child was habitually resident immediately before the removal."

The Hague Convention does not define the term "habitual residence." *Larbie v. Larbie*, 690 F.3d 295, 310 (5th Cir. 2012). "The inquiry into a child's habitual residence is not formulaic; rather it is a fact-intensive determination that necessarily varies with the circumstances of each case." *Id.* (quoting *Whiting v. Krassner*, 391 F.3d 540, 546 (3d Cir. 2004)). When engaging in this inquiry, the Fifth Circuit has "adopted an approach that begins with the parents' shared intent or settled purpose regarding their child's residence." *Id.* It "does not ignore the child's experience, but rather gives greater weight to the parents' subjective intentions relative to the child's age." *Id.* Specifically, "parents' intentions should be dispositive where . . . the child is so young that 'he or she cannot possibly decide the issue of residency.'" *Id.* (quoting *Whiting*, 391 F.3d at 548). "The threshold test is whether both parents intended for the child to abandon the habitual residence left behind." *Id.* at 310–11 (cleaned up). Without shared parental intent, the child's previous habitual residence controls unless the circumstances unequivocally indicate otherwise. *Id.* at 311.

As set out in the Petition, the Child was born in Mexico and lived there prior to his nonconsensual removal. ECF No. 5 ¶ 11 at 4 n.1. Thus, the Court finds that Petitioner has satisfactorily established—for the purpose of obtaining a TRO—that M.S.O.'s habitual residence is Mexico City, Mexico. Because M.S.O. is less than two years old, his parents' intentions are significant. The parties did not exhibit a shared intent that M.S.O. live in the United States. Because the Court has found that M.S.O. habitually resided in Mexico City, Mexico immediately before removal, the rights of custody will be determined by the application of the laws of the Republic of Mexico. *See Bernal v. Gonzalez*, 923 F. Supp. 2d 907, 918 (W.D. Tex. 2012).

Federal Courts have recognized that, absent a court order saying otherwise, Mexican law grants unmarried fathers a right of custody known as *patria potestas*. *See Sierra v. Tapasco*, No. 4:15-CV-00640, 2016 WL 5402933, at *7 (S.D. Tex. Sept. 28, 2016). Courts have ruled that this law affords a right protected by the Hague Convention. *Id.*; *Ortiz v. Cantu*, No. CIV.A. H-09-2913, 2009 WL 8543610, at *3 (S.D. Tex. Dec. 15, 2009) (citing *Whallon v. Lynn*, 230 F.3d 450, 459 (1st Cir. 2000)). As the child's father, under Mexican law, Petitioner has the kind of custody rights protected by the Convention by operation of law under the doctrine of *patria potestas*. *Id.* At the time of the child's removal from Mexico, he and Respondent lived together and jointly exercised those custody rights. ECF No. 5 ¶ 17.

Therefore, the Court finds that—for the purpose of obtaining a TRO—that Petitioner was exercising custodial rights to M.S.O., in M.S.O.'s habitual residence in Mexico City, Mexico, within the ambit of the Hague Convention. Petitioner has sufficiently demonstrated a likelihood of success on the merits to obtain a TRO.

**B.     Threat of irreparable injury.**

Plaintiff argues that there is a substantial threat of irreparable injury if a TRO is not entered because "Respondent, by her nonconsensual and illegal relocation to the United States, has demonstrated that she has no regard for Petitioner's rights as the Child's father and United States law governing her movement across borders and jurisdictions." ECF No. 3 at 5. If Respondent absconds with the Child again, Petitioner argues that it may be difficult, if not impossible, to locate them again. *Id.* The Court agrees with Petitioner that this would constitute irreparable damage and exactly the kind of circumstances warranting injunctive relief under the law. *See Rodriguez v. Escamilla*, No. DR-13-CV- 077-AM, 2013 WL 12109029, at *2–3 (W.D. Tex. Oct. 25, 2013) (finding the prospect that a respondent could once again relocate a minor

child without consent as sufficient to support the irreparable injury element of as a temporary restraining order in a Hague Convention case).

### C. Balance of the Equities

Because Petitioner's requested relief simply maintains the current status quo by ordering that M.S.O. remain with the Respondent in the geographic jurisdiction of this Court, it does not impose any injury on Respondent. *See Rodriguez*, 2013 WL 12109029, at *2 (finding that the balance of equities favored a temporary restraining order to preserve the status quo under similar circumstances). Accordingly, the Court concludes that Petitioner has established that the threatened injury—not being able to locate his son in the future—outweighs any harm that may result from the injunction to Respondent.

### D. Public Interest

The relief that Petitioner seeks is explicitly authorized by the Convention, an international treaty ratified between Mexico, the United States, and the other contracting states. *Saldivar v. Rodela*, 879 F. Supp. 2d 610, 616 n.5 (W.D. Tex. 2012). It is also explicitly contemplated by federal law, which states that a court "may take or cause to be taken measures under Federal or State law, as appropriate . . . to prevent the child's further removal or concealment before the final disposition of the petition." 22 U.S.C. § 9004. Because enforcing the Hague Convention is consonant with international and federal law, the Court agrees with Petitioner that issuing a TRO would not injure the public interest. *Rodriguez*, 2013 WL 12109029, at *2 (W.D. Tex. Oct. 25, 2013).

## CONCLUSION

This *ex parte* order is granted without notice to Respondent Ruth Sarai Erazo because the Court has determined that there is a significant risk that she will leave the jurisdiction of this Court prior to the issuance of an order for injunctive relief if she is given notice.

For the foregoing reasons, the Court **ORDERS** the following:

1. Respondent, her agents, and all persons acting in concert with her, will be restrained from removing the child M.S.O. from the geographic jurisdiction of this Court pending further order of this Court or another United States court or agency.

2. A hearing on Plaintiff's Request for Preliminary Injunction is set for **Monday, October 31, 2022**, at **11:00 a.m.** in Courtroom H, United States Courthouse, 262 West Nueva, San Antonio, Texas 78207. At the hearing, Respondent must personally appear with M.S.O., and show cause why this temporary restraining order should not be extended, as well as why M.S.O. should not be returned to Mexico. The Court will consolidate a trial of the case on the merits with the hearing of application for preliminary injunction. *See* FED. R. CIV. P. 65(a); *John v. State of La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 704 (5th Cir. 1985).

3. Petitioner shall serve a copy of this Order and his Original Petition and Request for Return of Minor Child to Petitioner (ECF No. 5) on Respondent no later than **October 21, 2022**.

4. Unless extended by the Court, this Order expires on **Wednesday, November 2, 2022**, at **5:00 p.m.**

5. No security bond is required.

It is so **ORDERED**.

**SIGNED** this 19th day of October, 2022.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE